wm(

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED
07 NOV -2 AM 10: 21
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**Jesus GARCIA-Inguez,**<br><br>Defendant(s) | Magistrate Case No: **07 MJ 2584**<br><br><u>COMPLAINT FOR VIOLATION OF</u>:<br><br>Title 8 U.S.C., Sec. 1324 (a)(2)(B)(iii)<br>Bringing in Illegal Aliens Without<br>Presentation |

The undersigned complainant, being duly sworn, states:

On or about **November 1, 2007,** within the Southern District of California, defendant **Jesus GARCIA-Inguez**, with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Adrian PRUDENCIO-Cruz, Ravith RUIZ-Escobar, Pablo ALFONSO-Hernandez,** had not received prior official authorization to come to, enter and reside in the United States, did bring to the United States said aliens and upon arrival did not bring and present said aliens immediately to an appropriate immigration officer at a designated port of entry; in violation of Title 8, United States Code, Section 1324(a)(2)(B)(iii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

_____
SIGNATURE OF COMPLAINANT
James Trombley
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS 2nd DAY OF **NOVEMBER, 2007**

_____
Louisa S. Porter
UNITED STATES MAGISTRATE JUDGE

CONTINUATION OF COMPLAINT:
Jesus GARCIA-Inguez

## PROBABLE CAUSE STATEMENT

Furthermore, the complainant states that **Adrian PRUDENCIO-Cruz, Ravith RUIZ-Escobar, and Pablo ALFONSO-Hernandez** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On November 1, 2007 Border Patrol Agents, A. Noyes, J. Herrera and J. Bauman were assigned to uniformed duties in the Chula Vista Border Patrol Station's area of operations. At approximately 12:30 A.M. Agent Noyes was scanning an area south of the 6.5 mile marker of Otay Lakes Road with a hand held infrared night vision scope when he observed a group of 11 individuals walking eastbound on the south side of Otay Lake. This area is approximately five miles east of the port of entry at Otay Mesa, California and about five miles north of the international border with Mexico. He later observed the group turn north and make their way through the water and reeds as they headed toward Otay Lakes Road.

At approximately 1:30 A.M. when the group was approximately 10 yards from Otay Lakes Road. Agents Noyes, Herrera, and Bauman attempted to approach them. Upon identifying themselves as Border Patrol Agents the group ran south into the reeds and water. One individual, later identified as Pablo ALFONSO-Hernandez was observed breaking away from the group and heading out into neck deep water and remained there despite repeated efforts to coax him out. Approximately two hours later the Mobile Infrared Scope Operator D. Gardner spotted a large group of people approximately 50 yards east of the 6.5 mile marker and 10 yards south of Otay Lakes Road. The agents responded and after a brief search found 10 individuals attempting to conceal themselves in high brush. The agents identified themselves as Border Patrol Agents and questioned the group as to their immigration status. Each individual admitted that he was a citizen and national of Mexico illegally present in the United States. This group was taken into custody and transported to Chula Vista Border Patrol Station for processing.

Up to this point Pablo ALFONSO-Hernandez had remained out in neck deep water of the lake approximately 60 yards south of Otay Lakes Road and refused to come out. At approximately 7 A.M. assistance was requested to retrieve ALFONSO from the water. At approximately 8 A.M. BORSTAR (Border Search Trauma And Rescue) arrived on scene and assessed that they would have to enter the water and retrieve ALFONSO who was now thought to be suffering from hypothermia. Agents Knowles, and Flores suited up in frigid water protective suits and waded out toward the area where ALFONSO was believed to be. They were guided by radio to ALFONSO's location, approximately 100 feet south of Otay Lakes Road and found him sitting in 3 feet of water. ALFONSO was then led back to shore. ALFONSO was then transferred to Sharp Chula hospital for treatment.

At the station routine record checks of the group revealed that defendant **Jesus GARCIA-Inguez** had thirty previous apprehensions by the Border Patrol and that in May 2000 he had been prosecuted under 8 USC 1326 as a Coyote foot guide. His record also revealed that he was identified as a footguide on five previous occasions. The defendant's record was determined by a comparison of his criminal record and the defendant's current fingerprint card.

CONTINUATION OF COMPLAINT:
Jesus GARCIA-Inguez

### DEFENDANT STATEMENT:

The defendant was advised of his rights as per the Miranda Warning. The defendant understood his rights and agreed to be interviewed without an attorney present. The defendant admits that he is a citizen and national of Mexico illegally present in the United States. The defendant admitted to being involved in alien smuggling on previous occasions. On this occasion the defendant admitted to guiding the group for a reduced smuggling fee. He agreed to help another foot guide in the group whom he could not identify. The defendant admits that he knew the group did not have documents allowing them to enter

### MATERIAL WITNESSES STATEMENTS:

Material witnesses Adrian PRUDENCIO-Cruz, Ravith RUIZ-Escobar, and Pablo ALFONSO-Hernandez, admit to being citizens and nationals of Mexico illegally present in the United States. They further agree in summary to the following; All had arrangements made by their relatives to be smuggled into the United States. They were to pay a fee to be brought into the United States. All members of the group were directed to meet at a vacant house on the eastern outskirts of Tijuana. At 8 PM they took a bus to an area east of Tijuana where they exited the bus and walked for about an hour and a half before reaching a barbed wire fence. The guide told them that they would be walking for about 6 hours then the guide directed them to cross and to be quiet, stay low and to hurry up and run fast. They eventually reached the lake area in the early morning on Thursday November 1, 2007. There was a paved road nearby and they headed toward it wading through the water. As they got closer to the road they encountered the Border Patrol. They became scared and ran back toward the lake and reeds. They had wondered for about an hour and a half through the water before attempting to reach the road again where they were eventually apprehended by the Border Patrol.

All material witnesses identified the defendant as their foot guide through a photographic lineup.